**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and Class Members*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DENISE VIOLANTE, *on behalf of herself, FLSA Collective Plaintiffs, and Class Members,*

Plaintiff,

v.

JTEC HOLDINGS INC.
f/k/a JJJ INTERNATIONAL INC.,
d/b/a JITJATJO,
and TIM CHATFIELD,

Defendant.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff DENISE VIOLANTE (hereby, "Plaintiff" or "Plaintiff VIOLANTE"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants JTEC HOLDINGS INC. (the "Corporate Defendant") and TIM CHATFIELD (the Individual Defendant, and together with the Corporate Defendant, "Defendants" or "JITJATJO") and states as follows:

## <u>INTRODUCTION</u>

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and similarly situated individuals are entitled to recover from

Defendant: (1) unpaid wages, including overtime wages, due to time shaving, (2) unpaid wages due to Defendants' use of an improper blended overtime, (3) unpaid wages, due to improperly retained tips, (4) liquidated damages, and (5) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to the State wage laws (as relevant to each individual), she and similarly situated individuals are entitled to recover from Defendant (as applicable to each individual law): (1) unpaid wages, including overtime wages, due to time shaving, (2) unpaid wages due to Defendants' use of an improper blended overtime rate, (3) unpaid wages due to improperly retained tips, (4) damages for late payment of wages, (5) statutory penalties due to wage notice and wage statement violations, and (6) attorneys' fees and costs.

3. At all relevant times, Defendant JTEC HOLDINGS INC. operated "JITJATJO" - an on-demand staffing agency and workforce management services provider, which hires registered employees to provide staffing for clients, which include businesses in the fields of hospitality, healthcare, retail, facilities services, education, and warehouse services (the "Clients").[1] According to an interview between TechCrunch and the Individual Defendant, as of December 2023, JITJATJO employed over 40,000 workers and had raised $30 million in a single funding round and a total funding of around $65 million.[2]

4. One of JITJATJO's Clients is ARAMARK FOOD SERVICE CORPORATION ("ARAMARK"), a hospitality and catering company. JITJATJO aided ARAMARK's staffing needs. One of the employees staffed by JITJATJO to ARAMARK was Plaintiff. Plaintiff worked for ARAMARK as a cook at St Johnland Nursing Center, Inc., which is a long-term care facility located at 395 Sunken Meadow Rd, Kings Park, NY 11754.

---

[1] https://www.jitjatjo.com/flex/work-on-demand-pay-gigs
[2] https://techcrunch.com/2023/12/12/gig-marketplace-jitjatjo-raises-30m-to-grow-into-new-markets/

5. Plaintiff also worked for JITJATJO's other Clients, including as a server, for events staffed by JITJATJO. Plaintiff frequently worked for events staffed by JITJATJO at Columbia University.

6. JITJATJO lists itself as Plaintiff's and other similarly situated employees' employer on wage statements. *See* **Exhibit A** (Plaintiff's Paystub Listing JITJATJO's Corporate Entity as an Employer). Further, JITJATJO retained the ability to hire, fire, adjust pay rates, retained records, and managed payroll for all individuals they staffed to Clients.

7. Plaintiff brings this wage and hour class and collective action on behalf of herself and all persons, who are all non-exempt employees (including waiters, bartenders, bussers, cooks, delivery workers, janitors, retail workers, warehouse workers, and general laborers among others) employed by Defendants during the applicable limitations period up to and including the present. Plaintiff, who primarily worked as a cook and waiter for Defendants' Clients, brings claims for unpaid wages caused by the following: (i) Defendants' automatic meal break deduction, which managers instructed employees to work through, (ii) Defendants' online training courses (e.g. food handling training, sexual harassment seminars, etc.), which were a requirement of employment but were not compensated, (iii) Defendants' timekeeping system (FlexNow) which would automatically clock employees out if they worked more than 15 minutes past their scheduled end of shift when the employee failed to timely respond to a message prompt that they were working, (iv) Defendants' failure to include bonus payments as part of employees' bonus premium rate calculations, and (v) Defendants' failure to pay manual workers in New York in a timely manner pursuant to NYLL §191. Additionally, when working as a waiter for Defendants' Client's catering events, Defendants failed to remit to employees' the tips earned by Plaintiff and similarly situated employees. Plaintiff and other employees were similarly underpaid by Defendants as a result of

Defendants' centralized payroll system, which made unlawful automatic deductions from employees' compensable work time, in violation of protections afforded under the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the wage and hour laws and regulations passed in the following United States domestic areas:

(1) Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§ 31-58, *et seq.*;

(2) District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code §§ 32-1001 *et seq.*;

(3) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

(4) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

(5) New York: New York Labor Law ("NYLL"), Article 19 §§ 650 et seq., and Article 6 §§ 190 *et seq.*; and

(6) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. §§ 333.101 *et seq.*;

(collectively, the "State Wage and Hour Laws" or "SWHL").

8. To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work, are not covered by the protection of a State's wage laws, Plaintiff further alleges that she and others similarly situated are entitled to recover from Defendants, the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

**<u>JURISDICTION AND VENUE</u>**

9. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as Defendant JTEC HOLDINGS INC. is headquartered in this district and the policies and practices complained of herein emanated from this district.

**PARTIES**

11. For all relevant periods, Plaintiff was a resident of Richmond County, New York.

12. Defendant JTEC HOLDINGS INC. is a business corporation organized under the laws of the State of Delaware, with a headquarters in New York City located at 175 Greenwich St, Fl. 38, New York, NY.[3]

13. Defendant JTEC HOLDINGS INC. was formerly known as JJJ INTERNATIONAL INC. until July 30, 2025.

14. Defendants manage their staffed employees through the same executive management team operating from the same Headquarters in New York, which sets standardized policies and managerial training. Further, regardless of the Client to which an employee is staffed, JITJATJO commonly manages the employees' payroll and human resources.

15. At all relevant times, all of JITJATJO's employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) were managed by JITJATJO and were compensated directly by JITJATJO for their work performed for JITJATJO's Clients. *See* **Exhibit A**, a copy of Plaintiff's paystub issued by JITJATJO for her work performed for a Client of JITJATJO.

16. At all relevant times, JITJATJO utilized centralized human resources and payroll departments to manage and compensate all of JITJATJO's employees. This allowed Defendants' employees to easily switch their employment between JITJATJO's numerous Clients. Regardless

[3] https://www.jitjatjo.com/about

of which JITJATJO Client an employee worked for, they were always compensated directly by JITJATJO. *Id.*

17. Regardless of which JITJATJO Client an employee worked for, the employee always used the same timekeeping application (such as FlexNow) to track their hours of work. *Id.*

18. At all relevant times, Individual Defendant TIM CHATFIELD was the Co-Founder and Chief Executive Officer of JITJATJO.

19. At all relevant times, the Individual Defendant exercised direct and actual functional control and oversight of the business and financial operations, as well as all other general affairs, of JITJATJO and its subsidiaries.

20. At all relevant times, the Individual Defendant exercised direct and actual control over the employment terms and conditions and the compensation structures of all employees of JITJATJO, including Plaintiff, FLSA Collective Plaintiffs, and Class Members.

21. At all relevant times, the Individual Defendant held and exercised direct and actual authority, control, and oversight over all Managers of JITJATJO's employees, including Plaintiff, FLSA Collective Plaintiffs, and Class Members.

22. At all relevant times, the Individual Defendant exercised the direct and actual power and authority (and also delegated the power and authority to managers and supervisors) to: (i) hire and fire all employees and Managers of JITJATJO (including Plaintiff, FLSA Collective Plaintiffs, and Class Members), (ii) determine their hourly rates or salaries, frequencies of payments, and means of payments, (iii) establish, alter, or otherwise affect their work schedules, (iv) otherwise directly or indirectly affect the qualities, terms and conditions of their employments, and (v) maintain their employment records.

23. At all relevant times, the Individual Defendant's roles, and the decisions made in connection to his roles, directly and actually affected the nature, conditions, and circumstances of Plaintiff's, FLSA Collective Plaintiffs', and Class Members' employments.

24. At all relevant times, the Corporate Defendant had gross annual revenues in excess of $500,000.

25. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

**NATIONWIDE - FLSA COLLECTIVE ACTION ALLEGATIONS**

26. Plaintiff brings claims for relief as a collective action pursuant to FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including waiters, bartenders, bussers, cooks, delivery workers, janitors, retail workers, warehouse workers, and general laborers among others) employed by Defendants in in any State on or after the date that is three (3) years before the filing of the Complaint in this case ("FLSA Collective Plaintiffs").

27. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, due to Defendants' policies of time-shaving and an unlawful policy of retaining gratuities. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

28. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their

names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**NATIONWIDE - RULE 23 CLASS ALLEGATIONS**

29. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including waiters, bartenders, bussers, cooks, delivery workers, janitors, retail workers, warehouse workers, and general laborers among others) employed by Defendants in any State in the six (6) years and 228 days (pursuant to NY's Executive Order tolling during the COVID pandemic), or the relevant statutory period of each jurisdiction's applicable labor law, before the filing of the Complaint (the "Class" or "Class Members").

30. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

31. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. In addition to the Class, there exists a subclass of workers, who worked in New York State ("NY State Subclass"). There is no

doubt that there are more than forty (40) members of the NY State Subclass. Plaintiff is a member of the Class and NY State Subclass.

32. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' (i) failure to pay all wages, including overtime, due to Defendants' timeshaving policies, (ii) failure to include bonus payments as part of employees' bonus premium calculations, and (iii) failure to distribute all tips from catering events. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

33. Plaintiff's claims are also typical of those that could be alleged by any member of the NY State Subclass, and the relief sought is typical of the relief, that would be sought by each member of the NY State Subclass. All members of the NY State Subclasss were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' (i) failure to pay manual workers in New York in a timely manner pursuant to NYLL §191. and (ii) failure to provide proper wage and hour notices, at dates of hiring and annually thereafter, as well as proper wage and hour statements, per requirements of the New York Labor Law. Plaintiff and other NY State Subclass Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

34. Plaintiff is able to fairly and adequately protect the interests of the Class and Subclass and has no interests antagonistic to the Class or Subclass. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

35. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

36. Defendants and other employers throughout the nation violate the New York Labor Law and other state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class

actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

37. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of the labor laws of the states they were employed in;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendant did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e) Whether Defendants paid Plaintiff and Class Members for all hours they worked;

f) Whether Defendants provided all earned gratuities to Plaintiff and Class Members;

g) Whether Defendants were required to pay NY State Subclass Members on a weekly basis pursuant to NYLL § 191,

h) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the labor laws of the states they were employed in; and

i) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by the labor laws of the states they were employed in.

## STATEMENT OF FACTS

*Background of Plaintiff's Employment with Defendant*

38. In or around March 3, 2024, Plaintiff was hired by Defendants to work as a cook at the Nursing Home located at 393 Sunken Meadow Rd, Kings Park, NY 11754, for Defendants' Client ARAMARK. Plaintiff's employment with Defendants ended on or around August 12, 2024.

39. During Plaintiff's employment, approximately four (4) times per month, an average of once a week, Plaintiff would work at other ARAMARK's venues to perform catering services as a server. Plaintiff was primarily transferred to Columbia University to work as a server.

40. Throughout her employment, Plaintiff's scheduled varied significantly, but Plaintiff frequently worked a schedule including significant overtime.

41. At the start of her employment, Plaintiff was compensated at different payrates ranging from eighteen dollars ($18.00) per hour to twenty-five dollars ($25.00) per hour.

42. FLSA Collective Plaintiffs and Class Members worked similar schedules to Plaintiff and were compensated at similar rates and by similar methods.

*Plaintiff's and Similarly Situated Employees' Claims of Timeshaving*

43. At all relevant times, Defendants failed to compensate Plaintiff her proper wages for all hours she worked, due to Defendants' time shaving, in violation of the FLSA and the SWHL.

44. At all relevant times, Plaintiff was unable to take a free and clear one (1) hour meal break as she was required to work through her break at three times a week. Despite Plaintiff working through her meal break, Defendants still automatically deducted an hour from Plaintiff's worked hours.

45. FLSA Collective Plaintiffs and Class Members were similarly unable to take a free and clear lunch break, but were still automatically deducted one hour of compensable time per day.

46. Plaintiff, FLSA Collective Plaintiffs, and Class Members were all required to complete Defendants' online training courses (e.g. food handling training, sexual harassment seminars, etc.), which were a requirement of employment but were completed at home using personal devices and were not compensated. In total, Defendants' online training courses took

Plaintiff, FLSA Collective Plaintiffs, and Class Members a minimum of three (3) hours to complete per individual member.

47. Additionally, Defendants' timekeeping system (FlexNow) would automatically clock Plaintiff, FLSA Collective Plaintiffs, and Class Members out if they worked more than 15 minutes past their scheduled end of shift. Defendants' system would send a prompt to Plaintiff's, FLSA Collective Plaintiffs', and Class Members' cellphones asking if the employee was still working. However, if the employee failed to timely respond to this message prompt the employee was automatically clocked-out and not compensated for all their hours.

48. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours they worked, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

*Plaintiff's and Similarly Situated Employees' Claims of Improperly Blended Overtime Rates*

49. Defendants' payroll system resulted in a failure to properly calculate employees' base regular rate for weeks when an employee earned a premium pay rate during the workweek. *See* 29 CFR §778.203 ("premium rate [that] is less than time and one-half…must be included in determining the employee's regular rate of pay…").

50. Defendants' employees earned premium pay in the form of "bonuses" typically due to extra hours worked beyond their schedule.

51. Defendants failed to include this premium pay in the calculation of overtime rates, due to a pay code software program error, resulting in a shortfall of pay to all employees who worked overtime hours.

52. For example, Plaintiff received two paystubs for the workweek of June 24, 2024, to June 30, 2024. The first paystub shows her base hourly rates and overtime rates. *See* **Exhibit A** (Plaintiff's Paystubs). The second paystub (for the same workweek) includes by itself Plaintiff's bonus payment. *See* id.

53. Pursuant to State wage laws and 29 CFR §778.203 this bonus must be included within the calculation of Plaintiff's base rate of pay for purposes of computing her overtime premium. As a payroll error this violation effected both Plaintiff and all employees subject to Defendants' payroll, including Plaintiff, FLSA Collective Plaintiffs, and Class Members.

*Plaintiff's and Similarly Situated Employees' Claims of Late Payment of Wages*

54. Defendants paid Plaintiff wages, but failed to pay Plaintiff within seven (7) days of the end of the week in which Plaintiff earned his wages, in violation of NYLL § 191(1)(a)(i).[4] Defendants would provide Plaintiff and NY State Subclass members with checks more than seven days after the end of the workweek during which Plaintiff and NY State Subclass members earned their wages. *See* **Exhibit A** (Plaintiff's Paystubs).

55. As seen from the week of June 24, 2024, to June 30, 2024, Plaintiff was compensated twelve (12) days after the workweek within which she earned her wages.

56. Plaintiff and NYS State Subclass members are all manual workers. Under New York Labor Law, all 'manual worker(s)' must be paid on a weekly basis. Pursuant to the New York State Department of Labor, manual workers includes non-exempt employees who spend more than twenty-five percent (25%) of their working time performing physical labor. Here, the NY State Subclass members spent the majority of their day engaged in physical labor. Therefore,

[4] See *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1145-46 (App. Div. 1st Dept.)

Plaintiff and NY State Subclass members are owed damages pursuant to NYLL § 191 and accrued interest on the delayed payments.

57. Further, manual workers generally include those employees, like Plaintiff and NY State Subclass members, whose labor is easily interchangeable with other able-bodied individuals. As workers earning only slightly above minimum wage, the jobs market itself demonstrates the interchangeability of Class Members. NYLL §191 was passed to protect individuals in the types of low-wage, interchangeable jobs occupied by Plaintiff and the Class. Plaintiff and the Class hold positions with Defendants which are easily trained and may be easily replaced by other able-bodied workers. The ease of replacement and low-wages of Plaintiff and the Class make them dependent upon their weekly earnings. This dependance and lack of job security, places Plaintiff and the Class directly in the category of workers that NYLL intended to protect by ensuring they receive their wages on a weekly basis.

58. That Plaintiff NY State Subclass members were engaged in easily trained, easily replaceable positions is clearly demonstrated by their job titles and responsibilities.

59. Due to Defendants' improper, untimely bi-weekly payments, Plaintiff would struggle to timely pay her own bills. Plaintiff would be forced to pay rent and credit-card bills late as she waited for her owed compensation to become available. NY State Subclass members would similarly struggle to timely pay debts due to Defendants' untimely compensation policies.

*Plaintiff's and Similarly Situated Employees' Claims of Improperly Retained Tips*

60. At all relevant times, Defendants unlawfully retained tips and gratuities from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and State wage laws.

61. When Defendants' employees worked private events and on behalf of JITJATJO's Clients, Plaintiff, FLSA Collective Plaintiffs, and Class Members were compensated at flat hourly rates according to their job titles, with no gratuities added to their wages.

62. Throughout her employment, Plaintiff was routinely required to work at private catering events.

63. In return for Plaintiff's, tipped FLSA Collective Plaintiffs', and tipped Class Members' services at these catering events, customers would leave monies that the customer believe would be passed on to employees as tips and/or further compensation. However, Defendants failed to distribute any amount of these monies to Plaintiff, tipped FLSA Collective Plaintiffs, and tipped Class Members.

64. Defendants were on notice that tips were being retained as tipping is industry standard for catering events, and the fact that *no* tips were distributed to service workers demonstrates Defendants knowledge that tips were being retained. Moreover, any notifications presented to Clients did not properly comply with notification requirements of State wage laws, including 12 N.Y.C.R.R. § 146-2.19.

65. At all relevant times, Defendants knowingly and willfully operated their business with a policy of unlawfully retaining tips and gratuities from Plaintiff, tipped FLSA Collective Plaintiffs, and tipped Class Members, in violation of the FLSA and State wage laws.

*Plaintiff's Claims of WTPA Violations*

66. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and NY State Subclass Members, in violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL.

67. At all relevant times, Defendants paid Plaintiff and NY State Subclass Members either in cash or by personal check, and failed to provide any paystubs to them with every weekly payment.

68. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

69. New York Court continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue.

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

70. Here, Defendants' conduct is has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and NY State Subclass Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and NY State Subclass Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and NY State

Subclass Members which accurately listed the total number of hours Plaintiff and NY State Subclass Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

71. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and NY State Subclass Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

72. Furthermore, Defendants failed to provide any wage notices to Plaintiff or NY State Subclass Members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and NY State Subclass Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and NY State Subclass Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff and NY State Subclass Members accepted their

employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

73. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and NY State Subclass Members with wage notices and accurate wage statements, in violation of the NYLL.

74. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and NY State Subclass Members with wage notices and accurate wage statements, in violation of the NYLL.

75. Plaintiff retained Lee Litigation Group, PLLC to represent her in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

76. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

77. At all relevant times, Defendants were and continues to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

78. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

79. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their properly owed wages for all hours worked, due to a policy of time shaving and improper overtime rate calculations.

80. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper earnings, due to a policy of improperly retaining tips.

81. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to them should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

82. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

83. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

84. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

85. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including unpaid overtime wages, illegally retained tips, and liquidated damages.

86. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**VIOLATIONS OF STATE WAGE AND HOUR LAWS**

87. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

88. At all relevant times, Plaintiff was employed by the Defendant within the meaning of the New York Labor Law §§ 2 and 651 and State Wage and Hour Laws, and Class Members were employed by Defendants within the meaning of the labor laws applicable to them.

89. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failing to pay wages for all hours worked, including overtime, due to time shaving and improper overtime rate calculations.

90. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failing to pay proper earnings, due to a policy of improperly retaining tips.

91. Defendants willfully violated Plaintiff's and Class Members' rights by illegally retaining tips from Plaintiff's and Class Members' wages.

92. Defendants failed to properly notify and compensate Plaintiff and Class Members of their hourly pay rates and overtime rates, in direct violation of the SWHL (as applicable).

93. Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at date of hiring and annually, per requirements of the SWHL (as applicable).

94. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by the SWHL (as applicable).

95. Due to the Defendants' SWHL violations, Plaintiff and Class Members are entitled to recover from Defendants (as applicable): their unpaid wages, unpaid overtime wages and premiums, illegally retained tips, liquidated damages for unpaid wages and overtime, statutory penalties, reasonable attorneys' fees, and costs and disbursements of this action.

**COUNT III**

**VIOLATIONS OF NEW YORK LABOR LAW § 191**

(brought on behalf of a Rule 23 Class)

96. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

97. At all relevant times, Plaintiff and NY State Subclass members were employed by the Defendants within the meaning of the NYLL, §§ 2 and 651.

98. Defendants willfully violated Plaintiff's and NY State Subclass members' rights by failing to pay them their wages within seven (7) days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

99. Plaintiff's and NY State Subclass members' work and responsibilities classifies them as manual workers pursuant to NYLL § 191.

100. Due to the Defendants' NYLL violations, Plaintiff and NY State Subclass members are entitled to recover from Defendants their damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT IV

## VIOLATION OF CLASS MEMBERS' CONTRACTS AND/OR DEFENDANT'S UNJUST ENRICHMENT

(brought on behalf of a Rule 23 Class)

101. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

102. To the extent that the Fair Labor Standards Act and/or SWHL do not protect employees for a failure to compensate gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws), Plaintiff and Class Members assert such claims under breach of contract and unjust enrichment.

103. When Plaintiff and Class Members entered into employment with Defendants, the parties formed implied contracts, which contain inherent duties of good faith and fair dealings, to pay employees at agreed upon hourly rates for all hours worked.

104. Plaintiff and Class Members provided services to Defendants as required under their agreements. However, Defendants' failure to compensate all hours of work, including gap-time hours, breached the Plaintiff's and Class members' agreements.

105. As a direct and proximate result of Defendants' failure to act fairly and in good faith, Plaintiff and Class Members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

106. Moreover, absent an implied contract, by virtue of Defendants' conduct as alleged herein, and Plaintiff's and Class Members' performance, Defendants were unjustly enriched by

the Plaintiff's and Class Members' conduct and did not compensate Plaintiff and Class members fully.

107. The circumstances are such that it would be inequitable to allow Defendants to retain the excess benefit from Plaintiff and Class Members conduct without paying fair value for it.

108. As a direct and proximate result of Defendants' wrongful withholding of funds that should have been paid to Plaintiff and Class Members, they have sustained damages in an amount according to proof at trial.

109. Defendants' withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiff's and Class Members' rights with the intent to cause injury to Plaintiff and Class Members. Plaintiff and Class Members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, Plaintiff respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the SWHL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime wages and premiums, as a result of time shaving, due under the FLSA and the SWHL or, in the alternative, due under breach of contract and/or unjust enrichment;

d. An award of unpaid gratuities as a result of Defendants' improper policies under the FLSA and the SWHL (as applicable);

e. An award of damages pursuant to NYLL § 191;

f. An award of statutory penalties as a result of Defendants' failure to comply with all State and local wage notice and wage statement requirements;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the SWHL (as applicable), or, in the alternative, due under breach of contract and/or unjust enrichment;

i. Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment;

j. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

k. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: August 14, 2026
New York, New York

Respectfully submitted,

By: *<u>/s/ C.K. Lee</u>*
C.K. Lee, Esq. (CL 4086)

**LEE LITIGATION GROUP, PLLC**
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*